***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Rowell. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Rowell with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Defendant-employer is Freightliner, L.L.C., a duly qualified self-insured, and the servicing agent is Cambridge Integrated Services Group, Inc.
3. An employee-employer relationship existed at all relevant times hereto through March 2, 2001, at which time plaintiff-employee retired from defendant-employer.
4. The average weekly wage is to be determined per an I.C. Form 22.
5. Plaintiff-employee alleges a date of onset of symptoms on or about September 11, 2001.
6. The parties stipulate into evidence as Stipulated Exhibit #1, I.C. Forms 18, 33, and 33R.
7. The parties stipulate into evidence as Stipulated Exhibit #2, medical records.
8. The parties stipulate into evidence as Stipulated Exhibit #3, additional medical records.
9. The parties stipulate into evidence as Stipulated Exhibit #4, Amended Pre-trial Agreement.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff, born October 2, 1938, was employed at various machine shops prior to being employed by defendant-employer on November 7, 1983. Plaintiff worked at defendant-employer until he retired on March 2, 2001. In 1997 for approximately a year and a half plaintiff was employed as a spot welder approximately 40-hours a week. As a spot welder he was required to hold a welder in his right hand and to support it with his left hand while an electrical hose and water hose ran over his right shoulder. Plaintiff then lifted the welder to eye-level and spot welded the tops of truck cabs approximately one spot weld for every inch. Plaintiff also used a Mig Welder, which he used above his shoulders. He used both the left and right arms interchangeably. Plaintiff did the spot welding job for a year and a half to two years up until 1998. Approximately six (6) months after the plaintiff started the spot welding job, he began to have discomfort in his shoulders.
2. The next job that the plaintiff had with defendant-employer was changing out dollies on trucks. This job required plaintiff to get down on his knees and to use an impact wrench. At this job he developed bilateral carpal tunnel syndrome which condition was accepted by the defendant as an occupational disease. As a result of the bilateral carpal tunnel syndrome, plaintiff was placed on light duty approximately six (6) months before he retired.
3. Plaintiff attributed the symptoms of pain with his shoulders while he was spot welding to arthritis. After the plaintiff retired he lived at home in Dallas, Gaston County, North Carolina. He did not obtain another job after retiring. His hobbies consisted primarily of fishing on Lake Norman. Plaintiff's fishing activities had been curtailed since he retired due to the pain in his shoulders. He has difficulty getting his boat into the water and back out again unless he has assistance. Plaintiff is diabetic and suffers from hypertension. After retiring, plaintiff attempted on one occasion to put up his camper, he got underneath the camper but could not get the jacks down due to his shoulder pain. His shoulder pain resulted in a complaint to his family doctor, Kenneth Edel, M.D., on June 14, 2001. Dr. Edel gave him some exercises but plaintiff was unable to do those due to discomfort in his left shoulder. Thereafter, Dr. Edel referred him to an orthopedic specialist.
4. Plaintiff had a number of workers' compensation claims while employed by the defendant. These included one for his thumb, knees, two for his back and the bilateral carpal tunnel syndrome. Plaintiff did not file this claim for his shoulder until approximately six (6) months after his retirement.
5. Dr. J. Emory Chapman is plaintiff's primary orthopaedic treating physician. Dr. Chapman is a board certified orthopedic surgeon who specializes in shoulder surgery. The plaintiff was referred by Dr. Edel to be seen by an orthopaedic specialist regarding his left shoulder in July 2001. Plaintiff was first seen by Dr. Gregory Hardigree of Orthopaedic Specialists on July 30, 2001. Following plaintiff's MRI of his left shoulder and its results, Dr. Hardigree referred plaintiff to be treated by Dr. J. Emory Chapman, a shoulder specialist with Orpthopaedic Specialists. Dr. Chapman diagnosed plaintiff on September 4, 2001 with, among other things, as having a significant, partial thickness rotator cuff tear. According to Dr. Chapman, repetitive overhead work particularly with strenuous lifting can cause damage to the rotator cuff. Plaintiff underwent surgery on October 10, 2001, to the left shoulder at which time he underwent a repair of a SLAP lesion, debridement of a partial thickness tear of the rotator cuff, decompression and an incision of his distal clavicle. On September 4, 2002, surgery was performed again on the left shoulder and the rotator cuff was further repaired. Dr. Chapman was of the opinion that since July 30, 2001, plaintiff was limited to no work above shoulder level and no repetitive overhead work and no lifting above shoulder level more than 10 pounds. In Dr. Chapman's opinion, plaintiff's employment duties with defendant-employer especially his duties of spot welder, likely caused or aggravated his rotator cuff problem to the left shoulder. Plaintiff is not at maximum medical improvement and probably would not reach that point as to the left shoulder until March of 2003.
6. Dr. Chapman had responded to a series of written questions which he opined at his deposition were still his conclusions: that to a reasonable degree of medical certainty the conditions for which he was treating the plaintiff were due to causes and conditions characteristic of plaintiff's employment with the defendant-employer; and further he stated in his written answers, "repetitive strenuous overhead use of arms is known to be associated with rotator cuff problems." Dr. Chapman was of the opinion to a reasonable degree of medical certainty that plaintiff's various jobs with the defendant-employer exposed him to a higher risk of contracting this disease or condition than the members of the public or employees in general; and finally, to a reasonable degree of medical certainty, the rotator cuff tear was not an ordinary disease of life to which the general public is equally exposed as opposed to those engaged in this particular trade or occupation. Dr. Chapman further commented that most jobs do not require strenuous, repetitive overhead use of the arm. In answer to defendants' cross-examination as to whether the two incidences that occurred after the plaintiff's retirement might have been the cause of the rotator cuff tear, Dr. Chapman said it was more likely that the accumulative activities of overhead work were the cause of the rotator cuff tear than any acute problem. Dr. Chapman further stated that his observations of the configuration of the plaintiff's tear appeared to him to be something that had been present for a long period of time. Dr. Chapman was of the opinion that the tear in plaintiff's left shoulder was likely there prior to the incidences that were reported in Dr. Edel's notes of June 14, 2001. The problems that plaintiff suffered to his left shoulder are a result of chronic repetitive use of his left arm in activities above the shoulder.
7. Dr. Kenneth P. Edel, a family physician at SouthPoint Family Practice in Stanley, Gaston County, North Carolina, had been treating the plaintiff for diabetes, high blood pressure and other general health problems and saw him on June 14, 2001, at which time plaintiff complained of left shoulder pain. Plaintiff advised Dr. Edel that he had had two occasions of acute pain to the left shoulder: one where plaintiff was reaching under his camper and had to do some lifting and, second, when he was helping his son hang a garage door. Subsequently on July 24, 2001, as the plaintiff continued to have complaints of pain and was not benefiting from physical therapy, Dr. Edel referred the plaintiff to an orthopedic clinic where he was subsequently treated by Dr. J. Emory Chapman. Dr. Edel has stated that he would defer to Dr. Chapman on all issues of causation as Dr. Chapman is a specialist and an expert in the field of orthopedic surgery. Dr. Edel opined, however, that rotator cuff problems often are the end result of repetitive use. He compared the rotator cuff tear similar to a frayed rope over a pulley which is irritated over the years with use and one injury can tear it at any point.
8. Dr. Chapman has not diagnosed or treated plaintiff regarding any problems or resulting conditions to his right shoulder. According to Dr. Chapman, he had not addressed plaintiff's right shoulder as of yet because he was still treating plaintiff's left shoulder.
9. The parties stipulated that plaintiff's average weekly wage shall be determined by an I.C. Form 22. As of this date, the parties have failed to submit an I.C. Form 22, upon which plaintiff's average weekly wage has been calculated and determined. Therefore, the parties shall following this Opinion and Award agree to plaintiff's average weekly wage either pursuant to a properly completed I.C. Form 22 or by other agreement.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. The plaintiff contracted a compensable occupational disease to his left shoulder from repetitive use, which was caused or aggravated by his employment with defendant-employer, which employment placed plaintiff at an increased risk of developing his left shoulder occupational disease. N.C. Gen. Stat. § 97-53(13).
2. The medical treatment of Dr. J. Emory Chapman to plaintiff's left shoulder is appropriate and plaintiff is entitled to have defendant provide all medical compensation reasonably necessary as a result of his left shoulder occupational disease to the extent it tends to effect a cure, give relief or lessen his disability. N.C. Gen. Stat. § 97-25.
3. Plaintiff has not yet reached the point of maximum medical improvement and has been temporarily totally disabled since July 30, 2001.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendant shall pay plaintiff temporary total disability compensation at a compensation rate to be determined by the parties pursuant to an I.C. Form 22 or by other agreement, on a weekly basis from July 30, 2001, to date and continuing until further order of the Commission. Said compensation has accrued to date shall be paid in a lump sum subject to an attorney's fee approved in Paragraph 3 of this AWARD. Present and future compensation shall also be subject to attorney's fees approved in Paragraph 3 of this AWARD.
2. Defendant shall pay all medical expenses resulting from plaintiff's compensable left shoulder occupational disease, when bills for the same have been submitted to defendant and approved through procedures established by the Industrial Commission.
3. A reasonable attorney's fee of twenty-five (25%) percent of the compensation due plaintiff of Paragraph 1 of this AWARD is approved for plaintiff's counsel, and shall be paid as follows: twenty-five (25%) of the lump sum due plaintiff under Paragraph 1 of this Award shall be deducted from that sum and paid directly to plaintiff's counsel. In regards to future compensation, plaintiff's counsel shall receive every fourth check.
4. The defendant shall pay the costs.
This the ___ day of April, 2004.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER